******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., with whom McDONALD, J., joins, concurring. I agree with the majority that the trial court did not penalize the defendant, Angel M., for the exercise of his constitutional right to maintain his innocence but, instead, denied the defendant a sentencing benefit due to his refusal to apologize to his victims. I write separately because the conclusion that the defendant was denied a benefit to which he was not otherwise entitled does not end the constitutional inquiry. Under the "unconstitutional conditions" doctrine, it is well established "that the government may not deny a benefit to a person because he exercises a constitutional right"; (internal quotation marks omitted) *Koontz* v. *St. Johns River Water Management District*, 570 U.S. 595, 604, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013); unless the benefit is conditioned on a "germane" governmental interest that "is sufficiently related to the benefit . . . ." *National Amusements, Inc.* v. *Dedham*, 43 F.3d 731, 747 (1st Cir.), cert. denied, 515 U.S. 1103, 115 S. Ct. 2247, 132 L. Ed. 2d 255 (1995). With respect to the victim of the crimes of conviction, I believe that the condition imposed by the trial court (i.e., an apology to that victim) was both germane and sufficiently related to the legitimate penological goals of sentencing to pass constitutional scrutiny. I question, however, whether the unconstitutional conditions doctrine was satisfied as to the trial court's requirement of an apology to A, the victim of uncharged misconduct, given that the defendant was not charged with, or convicted of, any crimes in connection with A. Although the defendant does not challenge the judgment of conviction on this specific basis, and we therefore need not decide whether the doctrine of unconstitutional conditions was violated in this case, I highlight the issue so that trial judges choosing to venture onto this thin ice in the future will be sensitive to the constitutional concerns.

As the majority acknowledges, the distinction "between showing leniency [at sentencing] . . . and punishing a defendant for his silence" is a "fine line" that "may be difficult to apply in a particular case . . . ." (Internal quotation marks omitted.) Text accompanying footnote 15 of the majority opinion, quoting *United States* v. *Stratton*, 820 F.2d 562, 564 (2d Cir. 1987). Indeed, the United States Supreme Court has expressed "doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed [on a defendant] and denying him the 'leniency' he claims would be appropriate if he had cooperated." *Roberts* v. *United States*, 445 U.S. 552, 557 n.4, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980). To the extent that a principled distinction exists, it necessarily depends on the establishment of a "baseline sentence," which is "the normal sentence that would be meted out if consti-

tutional rights were not salient." (Internal quotation marks omitted.) *United States* v. *Whitten*, 610 F.3d 168, 195 (2d Cir. 2010); see also *United States* v. *Oliveras*, 905 F.2d 623, 628 n.8 (2d Cir. 1990) ("in most situations to even make the threshold identification of whether the government is imposing a penalty or denying a benefit requires the location of some baseline from which the action at issue may be measured"). In the federal courts, the United States Sentencing Guidelines prescribe a "base offense level," which may be adjusted upward or downward depending on the defendant's participation in the crime or acceptance of responsibility. See U.S. Sentencing Guidelines Manual cc. 2–3 (2018). Thus, the federal courts typically can ascertain, by reference to the baseline sentence, whether a trial court has denied a defendant leniency or imposed a punishment as a consequence of an assertion of constitutional rights. See, e.g., *United States* v. *Jones*, 997 F.2d 1475, 1478 (D.C. Cir. 1993) ("[h]ere, there can be little doubt that the baseline sentence for [the defendant] was well above the 127 months ultimately imposed"), cert. denied, 510 U.S. 1065, 114 S. Ct. 741, 126 L. Ed. 2d 704 (1994); *United States* v. *Klotz*, 943 F.2d 707, 710 (7th Cir. 1991) ("Distinguishing between rewards and penalties was hard in the pre-guideline world, for sentencing was so individualistic that it was next to impossible to tell what would have happened had the constitutional right not been pertinent. Now that the guidelines are in place, however, there is a norm: the presumptive range."). In contrast to the federal system, there is no objectively ascertainable baseline sentence in Connecticut because we utilize a highly individualistic sentencing paradigm that confers on the sentencing judge "very broad discretion in imposing any sentence within the statutory limits . . . ." (Internal quotation marks omitted.) *State* v. *Huey*, 199 Conn. 121, 126, 505 A.2d 1242 (1986). Given the breadth of sentencing discretion vested in the trial court, there simply is no baseline sentence in our state system. Thus, it typically will be "next to impossible to tell" what sentence would have been imposed in the absence of a defendant's assertion of his or her constitutional rights. *United States* v. *Klotz*, supra, 710. This fundamental point complicates matters in the context of a doctrine that turns on the fine and elusive distinction between benefit and penalty.

We are saved from this conceptual quagmire in the present case, however, because the record clearly reflects that the trial court was holding out a carrot rather than threatening a stick, that is, offering the defendant the benefit of sentencing leniency instead of threatening him with an enhanced sentence. The trial court explained to the defendant that "apologizing, admitting what he did, taking responsibility will help the victims enormously, at least that has been my experience over four decades in this business. However, it puts a crimp in your ability to appeal, do you understand

that?" The defendant responded that he "did understand" but that he could not "say sorry for something that [he] did not do . . . ." The trial court replied that "that's your decision . . . . If you wish to continue to deny it, that's your absolute right. *The court will not punish you for that; however, you do not get any extra credit.*" (Emphasis added.) Because the defendant was denied a sentencing benefit to which he was not otherwise entitled, I agree with the majority that the trial court did not punish the defendant in violation of the due process clause of the fourteenth amendment to the United States constitution for maintaining his innocence.

I write separately because the particular facts of this case implicate another important constitutional limitation at play when a sentencing judge engages in the type of sentence bargaining that occurred here. The majority properly reaffirms the principle that a criminal defendant cannot, consistent with due process principles, be punished "merely for exercising a statutory or constitutional right." *State* v. *Revelo*, 256 Conn. 494, 513, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001). But the fact that a court's sentencing offer involves the conferral of a benefit rather than the imposition of a penalty does not give the sentencing judge carte blanche to condition that benefit on the defendant's willingness to say or do anything that the court believes will further the ends of justice. To the contrary, the doctrine of unconstitutional conditions imposes meaningful constitutional limitations on offers of sentencing leniency that are contingent on the defendant's relinquishment of his constitutional rights—even if the defendant can claim no entitlement to leniency in the first place.

Under the unconstitutional conditions doctrine, "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . . For if the government could deny a benefit to a person because of his constitutionally protected [rights], his exercise of those [rights] would in effect be penalized and inhibited." *Perry* v. *Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); see also *Koontz* v. *St. Johns River Water Management District*, supra, 570 U.S. 608 ("[v]irtually all of our unconstitutional conditions cases involve a gratuitous governmental benefit of some kind"). "The key proposition of the unconstitutional condition[s] doctrine is that the government may not do indirectly what it cannot do directly. The [United States] Supreme Court has articulated this proposition in the context of holding that the government may not grant even a gratuitous benefit on condition that the beneficiary relinquish a constitutional right."

*United States* v. *Oliveras*, supra, 905 F.2d 627–28 n.7.

Of course, not all conditions are prohibited under this doctrine. "[I]f a condition is germane—that is, if the condition is sufficiently related to the benefit—then it may validly be imposed. In the final analysis, the legitimacy of a government proposal depends on the degree of relatedness between the condition on a benefit and the reasons why [the] government may withhold the benefit altogether." (Internal quotation marks omitted.) *National Amusements, Inc.* v. *Dedham*, supra, 43 F.3d 747; see also *Koontz* v. *St. Johns River Water Management District*, supra, 570 U.S. 605–606 (government is allowed "to condition approval of a permit on the dedication of property to the public so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal"); *Agency for International Development* v. *Alliance for Open Society International, Inc.*, 570 U.S. 205, 217, 133 S. Ct. 2321, 186 L. Ed. 2d 398 (2013) (conditional benefits burdening constitutional rights are permissible if they "define the federal program" but impermissible if they "reach outside it").

In the present case, the trial court conditioned the "extra credit" sentencing benefit on the defendant's apology to the victims—plural—both the victim whom he was convicted of sexually assaulting and the victim whose testimony at trial was admitted as evidence of uncharged sexual misconduct.[1] See Conn. Code Evid. (2018) § 4-5 (b) (providing that, if certain conditions are met, "[e]vidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct"). It goes without saying that the government has a legitimate interest in eliciting an apology to the victim of the crime of which the defendant stands convicted. The defendant's acceptance of responsibility, in the form of a sincere apology to the crime victim, manifestly furthers one or more of the legitimate penological goals of sentencing. See *State* v. *Santiago*, 318 Conn. 1, 22, 122 A.3d 1 (2015) (penological objectives of sentencing are "deterrence, retribution, incapacitation, and rehabilitation"). As the United States Supreme Court has observed, "[a]cceptance of responsibility is the beginning of rehabilitation. And a recognition that there are rewards for those who attempt to reform is a vital and necessary step toward completion." *McKune* v. *Lile*, 536 U.S. 24, 47, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002). Furthermore, "[w]hen offenders express genuine remorse in person to those offended, the effects can be profound. . . . Empirical studies and anecdotal evidence from restorative justice programs confirm that face-to-face expressions of remorse and apology matter immensely to offenders and victims." (Footnote omitted.) S. Bibas & R. Bierschbach, "Integrating Remorse and Apology into Criminal

Procedure," 114 Yale L.J. 85, 115–16 (2004). Providing a criminal defendant the opportunity to admit his or her wrongdoing redounds to the benefit of society as a whole in numerous respects; a defendant's sincere acceptance of responsibility repairs a tear in the social fabric created by his or her transgression and thereby reaffirms and strengthens the underlying moral and legal principles at stake. Furthermore, the penitential act may make us safer because a repentant and rehabilitated defendant presumably is less likely to offend again. See, e.g., *United States* v. *Lopinski*, 240 F.3d 574, 575 (7th Cir. 2001) (sentencing credit for acceptance of responsibility under federal sentencing guidelines reflects, among other things, "the reduced risk of recidivism of a defendant who by facing up to the wrongfulness of his conduct takes the first step to better behavior in the future"); S. Bibas & R. Bierschbach, supra, 126 ("Offenders who come to terms with their crimes and apologize start on the path to reform. They learn valuable lessons and feel better about themselves as persons. They may thus become less likely to recidivate and are prime candidates for mercy to temper criminal justice."). I agree with the majority that the trial court did not violate the defendant's constitutional rights by conditioning a sentencing benefit on the defendant's apology to the victim for the crimes of conviction.[2]

I question, however, whether a trial court constitutionally may condition a sentencing benefit on a defendant's apology to a victim of uncharged misconduct, which is criminal conduct with which the defendant has not been charged or convicted. As Judge Dupont observed in her concurring opinion in *State* v. *Huey*, 1 Conn. App. 724, 738, 476 A.2d 613 (1984), aff'd, 199 Conn. 121, 505 A.2d 1242 (1986), "[t]o force the admission of guilt, at a sentencing . . . of a crime with which the defendant is not charged might jeopardize the defendant's rights in the future, either in connection with a retrial or with an independent trial claiming civil rights violations." Indeed, the Second Circuit Court of Appeals has held that it is unconstitutional "[t]o require a defendant to accept responsibility for crimes other than those to which he has [pleaded] guilty or of which he has been found guilty [because it] in effect forces defendants to choose between incriminating themselves as to conduct for which they have not been immunized or forfeiting substantial reductions in their sentences to which they would otherwise be entitled to consideration." *United States* v. *Oliveras*, supra, 905 F.2d 628; see also *United States* v. *Delacruz*, 862 F.3d 163, 177 (2d Cir. 2017) ("[a] denial of [acceptance of responsibility] credit for behavior [that the defendant] has continued to deny and has not been proved against him beyond a reasonable doubt violates the [f]ifth [a]mendment" (emphasis omitted; internal quotation marks omitted)); *United States* v. *Austin*, 17 F.3d 27, 31 (2d Cir. 1994) (defen-

dant's refusal to accept responsibility for "any offense *other* than the offense that is the subject of the plea" cannot be used to deny defendant sentencing benefit (emphasis in original; internal quotation marks omitted)). The First and Third Circuit Courts of Appeals have expressed similar views. See *United States* v. *Frierson*, 945 F.2d 650, 655–60 (3d Cir. 1991) (holding that trial court's denial of sentencing reduction for acceptance of responsibility on basis of defendant's refusal to admit guilt with respect to uncharged misconduct violated defendant's constitutional rights), cert. denied, 503 U.S. 952, 112 S. Ct. 1515, 117 L. Ed. 2d 651 (1992); *United States* v. *Perez-Franco*, 873 F.2d 455, 461–64 (1st Cir. 1989) (same).

To be clear, the legal issue is not free from doubt. Although the reasoning of Judge Dupont and the Second Circuit is persuasive to me, I recognize that there is a substantial line of federal authority holding otherwise. Specifically, a majority of the federal Courts of Appeals have held that the denial of a sentencing benefit constitutionally may be conditioned on a defendant's admission of responsibility to the commission of uncharged misconduct, among other reasons, because such a condition is rationally related to the "legitimate governmental practice of encouraging, through leniency in sentencing, both cooperation with law enforcement authorities and contrition on the part of the defendant." *United States* v. *Frazier*, 971 F.2d 1076, 1084 (4th Cir. 1992), cert. denied, 506 U.S. 1071, 113 S. Ct. 1028, 122 L. Ed. 2d 173 (1993); accord *Ebbole* v. *United States*, 8 F.3d 530, 537 (7th Cir. 1993), cert. denied, 510 U.S. 1182, 114 S. Ct. 1229, 127 L. Ed. 2d 573 (1994); see also *United States* v. *Clemons*, 999 F.2d 154, 161 (6th Cir. 1993) (adopting "the rationale of [*Frazier*], a [well balanced] opinion"), cert. denied, 510 U.S. 1050, 114 S. Ct. 704, 126 L. Ed. 2d 671 (1994); *United States* v. *Mourning*, 914 F.2d 699, 707 (5th Cir. 1990) (rejecting defendant's claim that denial of sentencing benefit for refusal to admit responsibility to uncharged misconduct violated defendant's right to silence under fifth amendment because "affording a possibility of a more lenient sentence does not *compel* self-incrimination" (emphasis in original)). As the Fourth Circuit Court of Appeals held in *Frazier*, the denial of a sentencing benefit under such circumstances is not unconstitutional because "[t]he purpose of conditioning the [sentencing] reduction on full acceptance of responsibility . . . is not to discourage assertion or force waiver [of constitutional rights] or to obtain incriminating information to facilitate future prosecution, but rather, to formalize and further a legitimate governmental practice." *United States* v. *Frazier*, supra, 1085.

The United States Supreme Court has declined to resolve this circuit split; see *Kinder* v. *United States*, 504 U.S. 946, 112 S. Ct. 2290, 119 L. Ed. 2d 214 (1992);[3] so the issue remains unresolved. We need not decide

the issue in the present case because the defendant does not claim that the trial court violated his constitutional right to maintain his innocence by conditioning a sentencing benefit on his admission of guilt and apology to a victim of uncharged misconduct. The defendant draws no constitutional distinction between either of the two victims—the one whom he has was convicted of sexually assaulting and the other whom he was not. Although the issue has not been raised or briefed by the parties, I highlight it here so that my agreement with the majority opinion is not misconstrued as an endorsement of a sentencing practice of dubious constitutionality.

For the foregoing reasons, I concur in and join the majority opinion.

[1] The record reflects that the trial court referenced the uncharged sexual misconduct on multiple occasions in close proximity to its request for an apology to the "victims," at one point stating: "[The defendant is] a predator, the stepdaughter, natural daughter; although he was not charged with the crimes against his natural daughter, she did testify under oath, [was] subject to cross-examination, and was quite credible. These two young ladies have been devastated by your actions, sir."

[2] The present case involves an unusual scenario because the trial court solicited an apology from the defendant after a trial in which the defendant had elected to testify and proclaim his innocence. Under these circumstances, I suspect that many trial judges hearing an apology at such a late stage in the proceedings would have rejected any plea for sentencing leniency on the basis of its timing. See, e.g., *United States* v. *Fonner*, 920 F.2d 1330, 1335 (7th Cir. 1990) ("[t]he . . . judge did not abuse his discretion in concluding that [the defendant's] last-minute apology was a deceitful little show"). Regardless, the trial court in the present case certainly was entitled to hold out hope that an apology to the crime victim, however belated, would serve a beneficial and productive penological purpose.

[3] Justice Byron White, who dissented from the court's denial of certiorari, described the circuit split and identified the importance of the legal issue. See *Kinder* v. *United States*, supra, 504 U.S. 951 (White, J., dissenting from the denial of certiorari) (although "the First, Second, and Ninth Circuits . . . have determined that conditioning the acceptance of responsibility reduction on confession of uncharged conduct denies the defendant his right against self-incrimination," other circuits, including Fifth Circuit, have held otherwise; "this is not a question of the mere application or simple interpretation of [the acceptance of responsibility guideline], but is instead a recurring issue of constitutional dimension, where the varying conclusions of the [c]ourts of [a]ppeals determine the length of sentence actually imposed").

———————————————